Good morning, Your Honors. May it please the Court, my name is Brianna Fuller and I represent Alfonso Lozano-Torres in this matter. I intend to reserve three minutes of my time for rebuttal. Mr. Lozano-Torres' conviction for evading a police officer was factually and logically connected to his unlawful status in this country, and for that reason should not have counted as part of the guideline calculation. Where is there evidence that he evaded arrest to avoid being caught as an illegal alien? Your Honor, the statement that he made when the police stopped him was that he had had four beers, that he did not want to go to jail, and that that's the reason why he ran. In this case, Mr. Lozano-Torres' motivation to avoid jail was inseparable from his motivation to evade. How do we know that? Your Honor, I think you know that based on his own personal history. The last time that he had come into contact with the police in 2003, he was arrested on October 18th. He was given a 30-day sentence, and less than a month later, he was deported. The same thing played out in this case, that he was arrested on January 2nd. On January 4th, there was an ICE detainer placed on him, and the complaint in this case was filed on January 7th of the same year. Mr. Lozano-Torres understood that going to jail meant being screened by immigration authorities and would result in his deportation. And the only way we know that is because that's what happened in the past? Your Honor, I think the way that you know that is it's, to some extent, a matter of common sense. Now, Mr. Lozano-Torres didn't state, you know, I had four beers, I didn't want to go to jail because I didn't want to be deported, likely because at the time he made that statement, it's not clear that they knew at that moment that he was unlawful. But as a matter of common sense, it's unlikely that he feared going to jail for its own sake. Well, I'm sorry, why is that? I mean, nobody likes to go to jail. You know, they put you in handcuffs. It's unpleasant in many ways. Why isn't it enough for him to not want to go to jail because he's been drinking in public? Your Honor, I think that the reason why I said I think there's a common sense argument to be made is that the consequences of going to jail in this case were not significant. He was on misdemeanor probation, and either for a first-time DUI or for misdemeanor probation, the consequences criminally to him were not all that serious, as compared to the immigration consequences that he stood to face if he was deported from the country. He'd been here since he was 16 years old. He didn't actually testify. He didn't say any of this, right? He could have. He did not put a declaration in, though, Your Honor. We simply argued based on the But he has a burden on this, doesn't he? The government has the burden of establishing that the criminal history should be contained. That's right, but there are certain things that, I mean, the government does not have the duty or the responsibility to negate every influence. It has to be something that he erases. He has put in sufficient evidence to then shift the burden back to the prosecution to overcome that. It was something he raised only by argument, Your Honor, and he did not put affirmative information into the record. That's correct, but I think basically How is the government supposed to know if he doesn't put in any actual evidence that this is not something that they need to put more evidence in? Your Honor, they were put on notice based on the party's sentencing position papers that this was our position, that the evasion conviction was factually and logically connected to his... Tell me about the earlier arrest and deportation. He was deported earlier after he did register? This was, Your Honor, there's two cases that are very similar. The other one is a registration offense. Oh, this is not registration. This is a case where he was in a car, the police pulled up next to him. Okay, I'm sorry, you're right. They have almost the same name, so they're very close. What do you have here then? I had more doubts about the other case. What do you have here then? I'm sorry? I mean, what then do you have? You talked about the prior, that there had been a prior event. What was that about? That was a conviction where he was arrested for obstructing a police officer, and he was given a very short sentence and put on probation. Okay, and how does that help you? What it shows is that Mr. Lozano-Torres connected in his mind going to jail with deportation. His prior history showed that going to jail meant being screened by immigration. Because they screen people who are detained, who are in jail. Exactly, Your Honor. That's our position, that because he understood that consequence from his prior history, that as a common sense matter, he understood. As a practical matter, that means anybody who's deportable will have an implicit excuse, you know, I have this additional reason for not wanting to go to jail. I think that, and we're not asking the court to find that every conviction under Vehicle Code 2800 would be part of the incident offense. For example, Mr. Lozano-Torres wasn't leaving the scene of a bank robbery or a murder or something where the consequences were so high that it's more likely than not that that was the reason why he was evading. He didn't say, he didn't make a statement when he was stopped with that. Well, if you were leaving the scene of a bank robbery, the criminal history would be for the bank robbery anyway. It would hardly be that the serious offense to add to the criminal history that he was leaving the scene of the bank robbery. I guess I was, the point I was trying to make, and I was making it inartfully, was that if he was leaving the scene of something which had much, much more serious criminal consequences, it would seem more likely that he was trying to avoid detection for that offense rather than trying to avoid detection for some other offense. What I was trying to tell you is that he wouldn't be worried about it. He'd be getting the points for the bank robbery. I understand. I understand. The other point I guess I would make is that he didn't say I think there's a man who's trying to help you. You're not grasping the straw. I guess I would say But abstracting, I mean, abstracting from the bank robbery situation, there are very few bank robberies. There are a lot more of these cases out there. Basically anybody that's arrested for a sort of low-level offense would say, well, the reason I was fleeing is that I didn't want to get deported. I guess the other point I wanted to make was that he did say That's an argument you can make in every case. It is an argument you can make in many cases. Basically any misdemeanor. I think where the consequences are so low compared to the consequence of deportation, I think it's an argument that could be made in many situations. Again, dealing with this small set of cases that are of the kind of evading an officer or leaving the scene. We're not talking about whether he can be prosecuted. We're just talking about adding criminal history points. That's right. Is there anything wrong with saying yes, probably, illegal aliens who are in Arizona, for example, when they flee the police, it's because they don't want to be deported, whether they've committed a misdemeanor or not? I think that's right. I think that we're talking about a small set of cases where the It's not a small set of cases. It's a fairly large set of cases. I mean, bank robberies are really few and far between. I mean, they get a lot of notoriety. People get scared. They're very serious. I don't mean to minimize at all the importance. But as Judge Michael points out, as to those who don't worry about this, you've got lots of other things to worry about. But there are lots and lots of small offenses. And often people flee for a variety of reasons. They don't want to face up to them. And I think if we were to rule in your favor in this case, this would unpublish an opinion to that effect. Basically, this would say that any time you have a small offense where the consequence of being deported is arguably much greater than the consequence of the offense itself, than the punishment, then this becomes what they call an offense callback, right? I think that that, as a matter of fact, would be the result. I think in a decent number of these illegal entry cases, there was some kind of evasion. You know, just as a matter of fact, I think that But we do know that people flee from misdemeanor offenses who are not subject to deportation. We know that people do stuff. So it may not be rational. You know, they may, for whatever reason, they may have other things they're worried about that the police never find out. I mean, there's lots of reasons. I mean, they may feel that, you know, they just can't take being handcuffed. You know, people do these things. I understand that, Your Honor. This is a case where Mr. Lozano, of course, had been to jail several times before. He had served much longer prison terms. Do you think we should require him at least to say, this is why I did it? No, Your Honor. I think that in this case, the common sense argument is enough. Couldn't he have said it during the sentencing to the probation officer or the pre-sentence officer? That that was why? He could have put that in. He did not in this case. How would the prosecutor, in a situation like this where the defendant doesn't offer any evidence, possibly rebut the inference that you want to draw? Your Honor, I think that, well, certainly he had the opportunity. It wasn't that the argument took him by surprise, but I think this was that he could have shown that there was some other reason that was more significant for him to be fleeing the scene. I'm just not sure how he would do that. Again, I think the things that I've said, if he had shown that he was leaving the scene because of a more serious crime or because of his statement was something different, then he would be able to argue that that was not the reason. But he's got no ability to cross-examine the defendant, right? He did not have the ability to cross-examine the defendant. And yet the defendant is offering essentially his testimony that, or offering evidence that his intent was to avoid being deported, and yet there's no ability to question him about that. I understand that concern, Your Honor. Okay, we'll hear from the panel. May I please the Court? Daniel Levin on behalf of the government. The district court didn't clearly err here when it made a finding that the defendant fled for reasons that weren't to avoid detection for his immigration offense. There are lots of reasons why someone might flee from the police. They might flee because they'd been drinking and driving, like this defendant said he was. They might flee because they were on probation, like this defendant was. They might flee because there were drugs in the car, an illegal gun, or because of a warrant. There are all sorts of reasons why someone would flee. Well, there weren't any drugs in the car here, were there? No, no, there weren't, Your Honor. But that would be an answer by the prosecution, said, well, look, there are illegal drugs in the car. That was good reason to flee. It was a more serious consequence of the drugs in the car. That's certainly true. We don't know whether there were drugs in the car or not. There's nothing in the record about that. I only offer it as one of dozens of possibilities that I could probably dream up for why someone might flee from the police. Immigration status, as we acknowledged in our brief, that could be a reason why someone flees. But here, there is absolutely no evidence that that's why a defendant fled. And it's not that hard for a defendant to put that evidence on. He could have put in a declaration. He could have took the stand and testified. And then the district court could have made a credibility determination, could have ruled on the evidence. And that's something district courts are well-equipped to do and could have happened. Do we know how long he could have been back in the country? No, we don't know when he reentered. It's at least, I think they used at least the date of his arrest he'd been back. But we don't know the reentry date. There was a 2003 deportation. I do think when you look, January 2nd of 2005, I think, is the arrest. Or on the evading fence. And then he's actually rolled out and eventually comes into ICE custody in 2007. But when you look at his criminal history, I counted up in the PSR, I think, 14 police contacts, some of which are convictions, others are arrests or other contacts. They don't all result in deportation. He has four deportations. Did he flee in any of them? He did flee. In 94, he had an arrest of conviction, a grand theft conviction. There was a high-speed chase, according to the PSR. He was convicted. He did a sentence of 16 months, was paroled. No immigration consequences from the record. He was then arrested again on a felon in possession in 95. His first deportation wasn't until 96. So nothing immigration-related came of that first conviction. Why did the judge even have to make a finding as to his reason? Or did he? I think, well, I think what he, I don't think he had to make any finding because I don't think there was any, there was no evidence from defendants to put it at issue, to call for a finding. He did say, based on the reasonably reliable information in front of me, and I think he was referring to the police report at that point, there was no evidence that there was immigration status was the motive for his flight. And I view that as a finding of, or at least a finding that immigration status was not the motive sufficient to make irrelevant conduct. That's at page, I think, 8 of the sentencing transcripts. Okay, thank you. Let me ask you one question. I assume you're familiar with all the discussions with police chiefs over the rule we have in Los Angeles. Special Order 41. Yeah. That's because the police chiefs here and in other cities are concerned that illegal immigrants will not deal with them and will avoid them because they're afraid of the immigration consequences? Your Honor, I think that was, I think that's one motive. It was put in place in 1979, and I know that that was one, I think it says in Special Order 41, objective is so that people in the community will talk to the police, report crime, and so forth. And they won't evade the police when they know something about a crime because of fear that they'll be deported, turned over to the immigration authorities? I don't know that it puts it that way, but I think the basic, as I understand it, the basic reason to put it in place was so that undocumented immigrants wouldn't be afraid of contact with the police. You could ask the chief or the police commissioner at the time to tell us what that was. I understand that Your Honor has some familiarity with it, I'm sure much more than I do. But I do think... It's not really just here. It's with all the police chiefs who met in the Justice Department opposing some of the Arizona provisions because of their concern that illegal immigrants, whenever they come in contact with the police, will try to avoid them because of their illegal status. I certainly, I don't dispute, and we haven't disputed in this case, that that could be a motivation. Now I think it is... Unlike the rest of us who just go running when we see police. Well, I think Judge King made a... Or drive down the highway and just say, hey. Well, I think Judge King did make a good point that evading convictions, citizens sustain evading convictions just as much as undocumented immigrants. So it's not... This is not an offense that is reserved to aliens. There's lots of reasons why people flee. And I'm not disputing that immigration status could be a motivation. It's not that much to put on the defendant. To the very least, put it at issue by saying, that's why I fled. He doesn't have, by the time we get to sentencing, any Fifth Amendment right not to talk about his alien status. He's admitted that he's in the country unlawfully. The amendment court can make a determination. It can evaluate his credibility and so forth. I don't think that's asking too much of a defendant. Okay, thank you. Thank you, Your Honor. Would you like a minute, Mr. Romano? I've used up my time. Unless the court has questions, I'll prepare to submit. Thank you. In case you're sorry, you will stay a minute. Thank you, Your Honor. We're here arguing Maxine Nassage v. Los Canos. I guess they are similar. Yeah. Good morning, Your Honors. This is Catherine Young from the Federal Public Defender's Office for the appellant, Mr. Los Cano. Mr. Los Cano, like the previous defendant, Mr. Lozano, contends, challenges the district court's imposition of criminal history points for a prior conviction on the ground that that conviction was incurred in the course of attempting to avoid detection or responsibility for the instant offense. This is a sex offender registration. That's correct, Your Honor. I want to go directly to that because I know Your Honor said that you had questions about that. The prior conviction in this case was failure to register as a sex offender. And Mr. Los Cano told the district court the reason I didn't do that was because when I was previously deported, I came back, I reported to my probation officer exactly as I had been told to do, and within one month I was deported and sent back to Mexico. So this time when I came back, instead of registering as a sex offender, I failed to register. Now, he was penalized for that in the state court. He was penalized for the illegal reentry in the federal court. The question is? What evidence is there that his reporting to his probation officer has had a causal connection to his being deported? In that case, he submitted in his position papers, he said, I reported to my probation officer and within less than a month the probation officer reported me to ICE or whatever it was at the time. You said there's a temporal connection. It happened within a short period of time. Is there any evidence that there was an actual report that somebody, the probation officer, reported him to? It would have been immigration at the time, not ICE, right? Right. I'm just wondering, is there anything that suggested the probation officer? I understand that, Your Honor. The evidence or the information that was presented at sentencing was from Mr. Lascana's perspective. There wasn't an evidence like a report that was submitted from the probation officer. It was from his perspective. When I reported within a month, I was back in Mexico. And from his perspective, I believe that the reason that I was deported was because I had reported to my probation officer. Did he say that? It said it in the sentencing position. So it's just attorney argument, right? Well, it's more than argument, I think, because the sentencing guidelines say that the district court may consider any information so long as it's reliable. And this Court has said in Felix in 2009, the sentencing guidelines provide that in determining relevant facts, sentencing judges are not restricted to information that would be admissible at trial, and a court may consider any information so long as it has sufficient indicia of reliability to support its accuracy. And so courts at sentencing are only required to consider information. It doesn't have to be. I'm sorry, Your Honor. So if you have a defendant sentencing and the attorney gets up and said, the reason he committed this crime is that his mother had cancer and was about to die and his father had just deserted him and he had a sick little brother, and there's no other evidence other than the attorney's statement that that can be taken into account in sentencing? Absolutely, Your Honor. I mean, I first came to this practice from civil practice, and I was horrified of what was considered evidence at sentencing. But it is under the sentencing guidelines and under this Court's rules, information rather than evidence can be taken into consideration at sentencing. Doesn't it have to be reliable? It has to be sufficiently reliable. But in this case, what's really important to consider is that he submitted a position paper, and he told the district court this. The government submitted a response to the position paper. They never objected to it. They never refuted it. They said nothing about it. At sentencing, defense counsel made the same argument. The government submitted. The government had the chance to say, we don't think this is reliable. We don't think the court should accept it. We object to it. They never did. Had the government done so, the defense then could have submitted more evidence if the judge wanted or if it was deemed appropriate. The first time the government ever said, this is not the reason he failed to register, was on appeal. And so the government really waived that argument, I think, because the evidence, the information. I'm sorry. What they said on appeal was there was no evidence offered, right? There was no evidence in the strictest sense of admissible evidence. There was no evidence. There was information submitted in sentencing. Any argument? It was more than argument, I think, because it was more factual. Argument, I think, is more based on the law. It was factual statements submitted as information, which the sentencing guidelines and this court's law specifically allow the district court to take into consideration. So it was information. The government characterizes it as argument, but it was more than argument. It was information. He was saying, when I was reported the last time, I came back to this country. I did exactly what I was supposed to do. I immediately reported. And within a month, I was back out of the country. And I learned from that that if I go to the authorities and tell them I'm here, I'm going to get sent out of the country again. And that's why I didn't register. You didn't ask for an evidentiary hearing on this. That's correct, because it was never refuted. Had there been any objection to it, they could have asked for an evidentiary hearing. More evidence could have been submitted. But basically, it was not refuted. The government responded. But the fact is you didn't say we wanted to submit evidence at this point. No. You relied on the statement of the lawyer's statement. And the lawyer's statement was presented to the probation officer. The lawyer's statement was presented in the sentencing papers that were presented to the district court. It was reiterated at the sentencing hearing. I'm sorry. As I understand it, there is a meeting with the probation officer, or at least an opportunity for a meeting for the defendant to meet with the probation officer, right? Yes. Okay. And at that point, either the defendant can show up and talk to the probation officer or the lawyer can present some information to the officer for him, right? Yes. Okay. Was anything submitted at that stage, either from the defendant or from the lawyer to the probation officer? No. And the reason, Your Honor, is because— I know, I know. Okay. No, I didn't want to say no, but this was a plea bargain. And so it was a special PSR, which is called a modified pre-sentence report, that was only directed to criminal history. And I'm not sure that in this specific case there was an invitation to meet with the probation officer. But it was a PSR, right? It was a modified PSR. What does that mean? It does deal specifically with criminal history and doesn't go into the other things that normally a probation officer would meet with the defendant about, you know, the defendant's mitigating circumstances and those types of things. And this is not criminal history? It is criminal history. But what I'm saying is I'm not positive in these modified PSRs that there's a chance for a meeting with a probation officer. I'm not sure. But you can submit something to the probation officer. I'm sorry? One can submit something. Absolutely. Okay. And then what happens is there's a PSR that's then sent to the district court and the lawyers, right? Yes, Your Honor. And often there's a recommendation from the probation officer, which sometimes the lawyers see and sometimes the lawyers don't see. But if there is a finding by the—or there's something in the PSR that one of the lawyers objects to, that side can then say, no, I object to this statement in the PSR and either present evidence to the contrary or ask for hearing or something of that sort, correct? Yes, Your Honor. Okay. In this case, when the PSR came out, how did it deal with this issue? What they did was the PSR came out. The defendant then filed his sentencing position. And in his sentencing position, the defendant said, we object to these points. At that point, they raised the straight Cruz-Gamajo issue. And then they said, apart from the straight Cruz-Gamajo issue, for a separate independent reason, in this case, those points should not be assessed because they are related, because it was committed in the course of attempting to avoid detection for the instant offense. And then presented the information that in the past he had reported he'd been deported. This time when he returned to the country, he didn't register because he didn't want to be deported again. So that was presented in the written sentencing position, which was in response to the PSR. Okay. And that was presented in the district court. Yes. A copy of it goes to the probation officer. Yes. Was there a modified PSR in response to this? No. There was no revised PSR. There was no, and normally there's a response from the probation officer, but I didn't see one in this case. There wasn't one? No. I mean, you didn't see one. Yeah. That's my understanding. I don't have one in my files. A certain thing, was this discussed with the judge? It was. The judge initially said, I've had this argument before, and I think the government has the better argument, referring to the straight Cruz-Gramajo argument. And defense counsel then said, well, this is a little bit different from Cruz-Gramajo. And the government submitted, and the court then said, you know, I'm accepting the PSR. So there was no discussion from the judge as to why this was different from the straight Cruz-Gramajo argument. No specific finding by the district court judge on the specific argument that was raised by the defense. And you did at that point, I'm not saying, oh, you were a public lawyer at that point. I'm not saying you should have, but at that point there was no request for an indenture hearing. Say, look, we'd like to, we dispute these. As I understand it, the PSRs are like proposed findings in a way, and the district court can simply adopt them. And one can object to them, and then you can present evidence, or at least ask to present evidence. There was no request to present evidence to refute the facts in the PSR, right? There was no request for an evidentiary hearing. But, again, I don't think that one, there was no, it was never refuted that that was the reason he would return. So that's why I think there was no request for an evidentiary hearing, because there was no argument. There was actually no dispute that that was the reason he had returned, that he had not registered. So unless there are any further questions, I'll reserve my 15 seconds for rebuttal. Thank you. I'm sorry. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is James Leff of the United States. In this case, defendants failed to register as a sex offender does not amount to relevant conduct to his 1326 violation. First of all, there is no factual basis to support the defendant's position in this case. The defense counsel only made argument at the time of sentencing in the position papers. There could be multiple basis for why someone could. Did the government express disagreement with that argument? No, they did not, Your Honor. The government was more concerned with the legal arguments pursuant to Cruz-Gamarjo, which was issued two months after the sentencing. Basically, if there are no facts and evidence, how can we argue something that just isn't there? In this case … Well, you could say that. They ask that you accept their explanation that here is the reason for the flight, and we would point out to you there's no evidence of that. That would be one way you could say something. Or if they said we should get credit because he fled for this reason, you could say we agree, we disagree, or you could remain silent. I get it. You remain silent. I believe that it's because the issue was just not fully addressed by the government on that one particular issue because there just was no factual basis. Attorney arguments are not evidence. As a matter of fact, if we look at the record in this case, there is no conclusive evidence to indicate why the defendant failed to register. However, we do have some indications that there was another reason why he failed to register, and that is the defendant was just flat out in denial. He didn't want to admit that he had been convicted of a prior sex offense in 2003. We can see this from the letters that were submitted from families and friends. They keep referring to the defendant's innocence. They're obviously not referring to the 1326 violation. One of the letters specifically even mentions, I've seen him around children. They're referring to this. And we've seen this in other cases that the government has prosecuted in which someone was just not. I mean, that's all fine, but I just wondered whether anybody said that to the judge, that you shouldn't accept this explanation because he's in denial. That's because there are lots of other cases in which people, you know, don't register for that reason. All I was asking was whether all the judge was confronted with or all that was presented to him was this explanation by counsel and whether the government had said to him don't accept it, there's no evidence, anything. No, that was not said to the court, Your Honor, because there was no factual basis, and the government was more concerned with the legal basis. Explain to me, how does the PSR comes in, right? Yes. And if nothing happens, and the district judge is satisfied with the PSR, the normal case adopts the PSR as the court's findings, and you don't have to have an interdictiary hearing because essentially those things are undisputed, and this is the typical case, right, in sentencing? Yes. But then there are cases where one side or the other disputes something in the PSR, and how is this supposed to be done? Are you supposed to say, look, this is wrong, and I want to present evidence of this, or is it enough to sort of argue against it? Your Honor, that's a very fact-specific analysis. In some cases, an evidentiary hearing may be required, such as in this case. Well, Your Honor, I'm asking if you are a side, if you're representing a side, which must have happened to you at some point. Yes, Your Honor. Where you get a PSR, and you think something that is factual in it, not analysis of law, because that you can argue with the court. Sometimes the probation officers get the law wrong. It's a difficult AIM. You have disputes with that, and that you can argue with the court. But let's say there's some fact in there that the probation officer sets out as true, as a fact, and you represent the side that thinks, no, that's not a fact, that that's something that we dispute. We think something else is the fact that is more favorable to your position. What do you do at that point? Your Honor, I've had that in other instances, and it hasn't got to the point where we've had evidentiary hearings. What the government has done is submitted a supplemental sentencing position, and we've attached exhibits to support this. We've had instances where they dispute and say, no, that was not me. That's not my prior conviction. And we will point out what the probation officer said, and we might also submit a RAF sheet or other evidence to show that this was the individual. Is it the position that you have to present evidence, like a RAF sheet or something? Yes. To challenge it? Yes. We will try to present some kind of evidence that we may have in our possession or get it, such as the person saying, no, that's not me. But if you just said, no, you're just wrong, that's not what happened, this isn't the person, and you didn't submit evidence. That would be an improper basis for an argument, Your Honor, because attorney statements are not evidence by either side. There has to be a factual basis behind it. Well, it's a little weird because unlike a magistrate judge's report, a magistrate judge has a report of recommendation, and either there are stipulations or there is evidence, there's facts and so on, so you've got a record. The probation officer doesn't really have a record. The probation officer does his own research, talks sometimes to the lawyers, usually talks to the lawyers, and compiles what he purports to be a true statement of the relevant facts and presents it to the district court. And the district court is entitled, if there's no objection, is entitled to rely on that as if it were essentially a report of recommendation by a magistrate judge, right? And the question I have is how do you challenge that? What is the proper basis of saying, no, I'm not happy with that, I want the district court to make a different set of findings? Well, first of all, in this case, Your Honor, the parties did have an opportunity to present evidence to the probation officer. In fact, the government did because this was a fast-track plea agreement with a modified criminal history report. So when counsel says she doesn't know, I'm sure that she, I guess she was not the lawyer below, you were the lawyer below? No, I was not, Your Honor. But you're aware that, in fact, the parties had an opportunity to present? Yes, and the government did as part of what we submit to the probation officer. You're representing that state of the record here, that both sides had a chance to present their facts when they went to the probation officer? Yes, and both parties had an opportunity to supplement the record. Both parties had a chance to present evidence with the sentencing position papers that they submitted. And let's not forget that the defendant had a right to speak during his sentencing. But if they just say, look, I think this is the wrong inference to draw from this. If they went through the arguments we've discussed, you know, where the lawyer said to the, in complaining about the probation divorce sentencing officer's recommendation, if they said this is not the right inference to draw, that when the case of an illegal alien who doesn't register, you shouldn't draw that inference, it's reasonable to conclude that the reason he didn't register was he was concerned about deportation. Wouldn't you expect that if you disagreed with that position, you would tell the judge that's wrong as a legal matter, you shouldn't make that inference? Well, first of all, Your Honor, in the PSR, they don't even mention anything about the reasoning for why the defendant failed to register. That was something that was later brought up in attorney arguments. So we don't have that factual basis. And perhaps that's why the government at the district court. No, no, I'm not saying there's a factual basis. I'm saying that from that type of offense for an illegal alien, you shouldn't infer that the reason he fled or that he failed to register, that the reason was that he just didn't like registration. It's reasonable, as the other side says, to infer that the reason is he didn't want to be deported. I'm sorry, I didn't fully understand your comment and your question before, Your Honor. I understand what Your Honor is getting at. And the problem is here is that we would have to be looking into the mind of the defendant for information we don't have. That's how you don't quite get the question. I'm not saying you couldn't say that to the judge. I'm saying when they make an argument that's a legal argument that would reduce the sentence, you wouldn't say to the judge that's not a good argument, we disagree. Wouldn't you respond to it if they're asking for a reduction in the sentence because of X legal reason? In 20-20 hindsight, perhaps we should have made a comment along those lines as well, Your Honor. Is there ever a case, in your view, when somebody commits a crime after they have illegally reentered, that that crime would be relevant conduct, should be treated as relevant conduct as opposed to prior criminal history? Absolutely, Your Honor. If I can give two brief examples, I notice my time is almost, or it is up. But may I just briefly? First one would be, suppose that someone illegally entered the United States from Canada and they were driving a stolen vehicle. That defendant was first prosecuted for receiving stolen property. And then subsequent during that process, they realized he was an illegal alien and entered the country. That would map to relevant conduct. And then we also have the example in the 11th Circuit decision of United States v. White, where a defendant lied to a police officer. Statistically, if you can tell from the facts of that case, that individual was trying to avoid immigration consequences. It was crystal clear from the facts that were presented in that case. And I see my time is up, unless the Court has any further questions. Okay, thank you. Thank you, Your Honor. We are out of time. Would you like a minute for rebuttal? Thank you. If I may, I'd just like to respond briefly to two points that were made by the prosecutor. One of the points the prosecutor made was that if the PSR offers a conviction and the defendant responds saying that wasn't me in that conviction, the government would submit exhibits. And it would be improper not to submit exhibits, showing that, in fact, the defendant was the subject of that conviction. That's what didn't happen in this case. And the prosecutor also said the PSR did not mention why he failed to register. In this case, it wasn't that the defense was refuting the PSR. The defense was adding information to the PSR. The defense added that information as compliant with the sentencing guidelines and this Court's authority, and it was never refuted by the government. No one ever disputed it. And for that reason, it shouldn't be allowed to be contemplated for the first time on appeal. Thank you. Thank you. The case is now submitted. We'll take a five-minute recess. All rise. This Court stands in a five-minute recess.
judges: Whyte, Kozinski, Reinhardt